**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


JONAH BASCLE, ET AL                          *         CIVIL ACTION NO. 12-1926
                                  Plaintiffs    *
                                                           *
                                                           *         SECTION: H
                                                           *         JUDGE JANE TRICHE MILAZZO
VERSUS                                            *
                                                           *         MAGISTRATE: 5
JEFFERSON PARISH, ET AL              *         MAG. ALMA CHASEZ
                                                           *
                                  Defendants   *
                                                           *

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *


<u>**ORDER AND REASONS**</u>

The matters before the Court are: a Motion to Dismiss filed by Regional Planning

Commission ("RPC") (Doc. 27); a Motion to Dismiss filed by Jefferson Parish ("Jefferson") (Doc. 34);

a Motion to Dismiss filed by St. Tammany Parish ("St. Tammany") (Doc. 48); a Motion to Dismiss

filed by Orleans Parish ("Orleans")[1] (Doc. 49); and a Motion to Dismiss filed by St. Bernard Parish

Government ("St. Bernard") (Doc. 58) (collectively "Defendants").  For the following reasons

---

[1]Orleans asserts in its Motion to Dismiss that it was incorrectly identified as "Orleans
Parish" and the proper Defendant is the City of New Orleans.

-1-

Defendants' Motions are GRANTED.

## BACKGROUND

Plaintiffs, Jonah Bascle, Jesse Bascille, and Lucille Ogden are mobility-disabled residents of Orleans Parish. Plaintiffs claim that they are unable to utilize the services of taxicabs because, to this date, there are no vehicles accessible to disabled persons operating in Jefferson Parish, St. Tammany Parish, the City of New Orleans, and St. Bernard Parish (collectively "The Parishes"). Plaintiffs allege that RPC and The Parishes have failed to provide Accessible Taxicabs ("AT") and transportation throughout the Greater New Orleans Area ("GNO") or coordinated an effort for this result.   Based on this alleged failure, Plaintiffs complain that Defendants have violated the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("RA"), Louisiana Constitution Article I, Section 12 and Louisiana Revised Statute § 49:146, *et seq.*, and the Louisiana White Cane Law.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  The Court need not, however, accept as true legal conclusions couched as factual allegations.  *Iqbal*, 129 S. Ct. at 1949–50.

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.  *Id*.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.  *Iqbal*, 129 S. Ct. at 678 (quoting *Twombly*, 550 S. Ct. at 1955).  Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.  *Lormand*, 565 F.3d at 255–57.  The Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

**LAW AND ANALYSIS**

The Court finds that the ADA only precludes the Defendants from discriminating in their licensing function and does not require them to plan for the provision of accessible taxicabs to disabled individuals.  Accordingly, Plaintiffs' claims under the ADA fail.  Because the ADA and RA

are judged under the same legal standards, the Court finds that Plaintiffs' claims similarly fail under the RA.  Further, the Court finds that even if taxicabs are considered an accommodation under Louisiana law, Plaintiffs fail to show that Defendants have effected a policy of discrimination denying them access to taxicabs.  Accordingly, Plaintiffs' claims pursuant to Louisiana law also fail. Defendants' Motions are granted and Plaintiffs' claims are dismissed.

I.    *Americans with Disabilities Act and Rehabilitation Act*

Defendants aver that Plaintiffs cannot state a claim under either the ADA or RA.  This Court agrees.  Accordingly, Plaintiffs' ADA and RA claims against Defendants are dismissed.

A.    <u>Legal Standard</u>

"The ADA is a broad mandate of comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream American life."  *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (citation and quotations omitted). "Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal finding."  Id.  "Title II of the Americans with Disabilities Act, like § 504 of the Rehabilitation Act, provides that individuals with disabilities shall not be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  *Id.* at 220–21 (citing 42 U.S.C. § 12132, 29 U.S.C. § 794(a)).

Title II of the ADA is divided into two parts.  *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671 (5th Cir. 2004).  Part A covers public services generally and part B applies specifically and

only to public transportation provided by public entities.  *Id.* (citing 42 U.S.C. §§ 12131, *et seq.*; 42

U.S.C. §§ 12141, *et. seq.*)  To establish a *prima facie* case of discrimination under either Part of Title

II of the ADA, a plaintiff must demonstrate: (1) that he is qualified individual within the meaning

of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services,

programs, or activities for which public entity is responsible, or is otherwise being discriminated

against by public entity; and (3) that such exclusion, denial of benefits, or discrimination is by

reason of his disability. *Melton*, 391 F.3d at 671–72 (citing *Lightbourn v. County of El Paso, Tex.*, 118

F.3d 421, 428 (5th Cir. 1997)).

      A *prima facie* case under the RA is operationally identical to the test under the ADA.  *Id.* at

676 n.8.  Moreover, "the ADA and Rehabilitation Act generally are interpreted *in pari materia*."

*Frame, 667 F.3d* at 220–21   Indeed, the language in both the ADA and the RA is similar, and the

remedies, procedures and rights available under the RA are also available under the ADA.  *See* 42

U.S.C. § 12133.  As a result, jurisprudence interpreting either section is applicable to both." *Hainze*

*v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).

      B.    <u>Arguments of the Parties</u>

      The RPC argues that it has no statutory or other authority to regulate taxi services or to

require The Parishes or taxicab companies to provide AT.  Moreover, even if the RPC had authority

to regulate taxicabs, federal law exempts taxicab companies and owners from both the ADA and

RA and, therefore, cannot be compelled to provide AT.  The Parishes argue that there is no applicable mandate under the RA or ADA that requires the Parishes to provide ATs or to compel private taxicab service providers through its regulations to do the same.  The Parishes aver that because they operate a certification and/or licensing program for the private taxicab companies, and not a transportation program, then the provisions of the ADA and RA cannot apply to them.

Plaintiffs argue that RPC's responsibilities are to prepare and plan for the development of the Greater New Orleans area which includes the responsibility to plan for the transportation needs of the disabled. Plaintiffs further contend that just because RPC does not have the authority to compel a private industry to purchase accessible automobiles does not mean that it does not have the authority to create programs encouraging taxi companies to purchase accessible vehicles.

Plaintiffs further maintain that in order to establish a case under the Rehabilitation Act, they must only allege that an otherwise qualified handicapped individual is denied access to a program to which he or she is entitled. Plaintiffs further claim that a regulating and licensing authority can be held liable for discrimination under the ADA in the industry in which the Parishes admit to operating. Plaintiffs further allege that a taxicab is privately owned property to which the general public has access as invitees and thus, Plaintiffs have properly alleged a violation of Louisiana Revised Statute Section 49:146 and similarly, that the Parishes have violated the Louisiana White Cane Law by refusing access to taxicabs.

-6-

C.    Analysis

"Title II of the ADA prohibits 'public entities' from discriminating against disabled individuals."  *Reeves v. Queen City Transp.*, 10 F.Supp.2d 1181, 1183 (D.Col. 1998).  A public entity is defined, in pertinent part, as any state or local government or  any department, agency, special purpose district, or other instrumentality of a state or states or local government.  42 U.S.C. § 12131(1).  For the purposes of the Motions all Defendants are considered "public entities."

1.    **Title II: Part B**

"Subtitle B of Title II specifically governs the provision of public transportation services by public entities."  *Noel v. N.Y.C. Taxi and Limousine Comm'n*, 837 F.Supp.2d 268, 272 (S.D.N.Y. 2011) (citing 42 U.S.C. §§ 12141-12165).  "[T]he Secretary of Transportation [] is directed to promulgate regulations to implement part B under 42 U.S.C. § 12149."  *Melton*, 391 F.3d at 671.  Plaintiffs aver that accessible taxis are considered a demand responsive system.  A "demand responsive system means any system of providing designated public transportation which is not a fixed route system." 42 U.S.C. § 12141(1).  Title B dictates that if a public entity operates a demand responsive system it is considered discriminatory for the public entity to purchase or lease a new vehicle that is not readily accessible to and usable by individuals with disabilities unless the system otherwise provides an equivalent level of service.  42 U.S.C. § 12144.

The pivotal issue is whether the Defendants "operate" the taxicab system.  The statute,

however, does not define the term operate. *Colon v. League of United Latin Am. Citizens*, 91 F.3d 140 (5th Cir. 1996) (citing *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995)). The Fifth Circuit has held that when assessing Title III of the ADA, however, the term operate shall be construed in accordance with its ordinary and natural meaning. *Neff*, 58 F.3d at 1066 (citations omitted). Accordingly, operate is "to put or keep in operation," "[t]o control or direct the functioning of," or "[t]o conduct the affairs of; manage." *Id.* The Court finds it appropriate to use these meanings when interpreting Title II as well.

In *Noel v. New York City Taxi and Limousine Commission*, the Southern District of New York found that a public entity can certainly operate a transportation system. 837 F.Supp.2d at 273. The Court held that a public entity will be considered an operator when it is acting as a business directly providing transportation services to the public. *Id.* In this sense, the Court noted that the entity will usually collect fares and receipts in exchange for transportation services; purchase, lease, or maintain the necessary equipment including vehicles; plan service routes and schedules; and hire, fire, and manage the employees who drive and maintain the vehicles. *Id.* Because neither the RPC nor The Parishes operate in such a manner, the Court finds that Defendants do not operate a demand responsive system in the traditional sense. *See id.*

On the other hand, a public entity will also be deemed an operator if its operates a demand responsive system via a third party through a contractual arrangement or relationship. *Id.* at 273–74. Essentially, the third party private entity stands in the shoes of the public entity and

-8-

assumes its responsibilities with relation to the transportation services given.  *Id.*  In this situation, the public entity "[w]ould have to ensure that the private entity complie[d] with the public entity requirements of subtitle B of Title II."  *Id.*  There is neither an allegation nor any evidence in the record that the RPC or the Parishes have engaged with a private entity to operate a demand responsive system.  Accordingly, the Defendants cannot be deemed as an operator in this sense either.

The RPC is a quasi-governmental agency designed to coordinate growth and development. Nowhere in its governing provisions is there any authority to provide services or function as a transportation service provider to the public.  *See* La. Rev. Stat. § 33:135.  The Parishes are authorized to regulate private transportation services operated within its jurisdiction. *See* La. Rev. Stat. § 33:4792(B).  Under this authority the Parishes may then operate a licensing or certificate program.  They do not, however, operate a transportation system as a business directly providing services to the public.  Additionally, not one of the Defendants operate a demand responsive system vis-a-vis a third party such that they could be considered an operator in a non-traditional manner.  Because none of the Defendants operate a transportation system as defined in subtitle B of Title II, its provisions are inapplicable.  Accordingly, to the extent that Plaintiffs assert claims under Title II(B) of the ADA, these claims are dismissed.  Because the RA and ADA are interpreted under the same standards, any claim under the RA is also dismissed.

2.      **Title II: Part A**

"The ADA is a broad mandate of comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life."  *Frame*, 657 F.3d at 223.  It achieves this goal by disallowing a public entity to deny a qualified individual with a disability of the benefits of its services, programs, or activities.  *See* 42 U.S.C. § 12132.

"The ADA does not define the services, programs, or activities of a public entity."  Frame, 657 F.3d at 225 (quotations omitted).  The Fifth Circuit, however, has used the definition from the RA to interpret this phrase.  *See id.*  Thus, a program or activity is deemed to be all of the operations of a local government.  *Id.* (quotations and citations omitted).  Despite this broad and comprehensive definition, "the scope of Title II is not limitless."  *Noel v. N.Y.C. Taxi and Limousine Comm'n*, 687 F.3d 63, 68–69 (2d Cir. 2012) (quotations and citation omitted).

Notably, "the operative language of Title II . . . must be read in conjunction with applicable implementing regulations."  *Reeves*, 10 F.Supp.3d at 1183 (citing *Crandon v. United States*, 494 U.S. 152, 158 (1990)).  In response to a Congressional mandate, the Department of Justice ("DOJ") "[i]ssued regulations defining the forms of discrimination prohibited by Title II of the ADA."  *Reeves*, 10 F.Supp.3d at 1183.

The Parishes have a regulatory scheme for private taxicabs whereby they administer

licensing and certification programs, including the issuance of certificates of public convenience and necessity.[2]  The RPC is involved in no such administration, however the Parishes are members of the RPC.  Based on the Defendants role, the most germane regulation here is 28 C.F.R. § 35.130(b)(6), which dictates the conduct of a public entity in the administration of a licensing program.  *See Noel*, 687 F.3d at 69.  "Section 35.130(b)(6) prohibits a public entity from administer[ing] a license or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability or establish[ing] requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of that disability."  *Id.* (citing 28 C.F.R. § 35.130(b)(6)) (internal quotations omitted).

Even if the ADA is construed broadly, the clear terms of Section 35.140(b)(6) prohibits Plaintiffs claims against Defendants.  In essence, Section 35.130(b)(6) prohibits Defendants from discriminating in their licensing and certification functions to individuals with disabilities who are

---

[2]

Jefferson governs the issuance of permits and the regulation of private taxicab service providers within Jefferson Parish via their Code of Ordinances.  (Doc. 34-2 at 3.)  St. Tammany has the authority to investigate applicants and issue permits and regulations of private taxicab services providers within St. Tammany Parish through their Code of Ordinances.  (Doc. 48-2 at 2.)  The City of New Orleans is a licensing authority and has the right to investigate complaints, establish regulations, and issue permits for private taxicab service through its Department of Safety and Permits.  (Doc. 49-1 at 2.)  St. Bernard is authorized to regulate by ordinance private transportation of services within its jurisdiction, including the issuance of permits and the regulation of private taxicab service providers.  (Doc. 58-1 at 7.)

otherwise qualified to own or operate a taxicab.  *Noel*, 687 F.3d at 69.  It does not, however, assist persons who are consumers of the licensed or certified product - e.g. Plaintiffs.  *See id.*; *see also* 28 C.F.R. § 35.130(b)(1) ("[t]he programs or activities of licensees or certified entities are not themselves programs or activities of the public entity merely by virtue of the license or certificate.").

The Second Circuit has recognized that this conclusion is consistent with the Technical Assistance Manual of the Department of Justice ("TAM"), which is persuasive authority when interpreting the ADA.  *Noel*, 687 F.3d at 69.  The TAM states that:

> a public entity may not discriminate on the basis of disability in its licensing, certification, and regulatory activities.  A person is a "qualified individual with a disability" with respect to licensing or certification, if he or she can meet the essential eligibility requirements for receiving the license or certification . . . Public entities may not discriminate against qualified individuals with disabilities who apply for licenses, but may consider factors related to the disability in determining whether the individual is qualified.

*The American With Disabilities Act Title II Technical Assistance Manual Covering State and Local Government Programs and Services*, TAMII–3.7200 (visited Aug. 13, 2013), *available at* http://www.ada.gov/taman2.html#II-3.7200. The TAM concludes that a "[S]tate is not accountable for discrimination in the employment or other practices of [a private] company, if those practices are not the result of requirements or policies established by the State." *Id.*  The Court finds that this same reasoning applies to other governmental entities such as the Parishes and the RPC.

The crux of Plaintiffs' claims is that there are too few accessible taxicabs within the Parishes. Plaintiffs aver that because of Defendants failure to set policies and regulations governing the characteristics of vehicles, access to disabled individuals is severely limited.  Thus, Plaintiffs contend that Defendants should use its regulatory, licensing, and certification authority to require or, at a minimum, encourage more accessible taxicabs.  While this Court agrees that more accessible taxicabs are needed and strongly empathizes with Plaintiffs, no such claim is cognizable under Title II(A) against any of the Defendants.  Because there is nothing in Defendants' licensing, regulations, or certifications that is discriminatory, Plaintiffs fail to state a claim under Title II(A) of the ADA and, accordingly, Plaintiffs claims are dismissed.  Moreover, because ADA and RA are interpreted under the same provisions, Plaintiffs fail to state a claim under the RA as well.

II.      *Louisiana Constitution Article I, Section 12 and La. Rev. Stat. Ann. § 49:146*

Plaintiffs aver that Defendants are in violation of Louisiana Constitution Article 1, Section 12 and Louisiana Revised Statute Section 49:146.  For the following reasons, Plaintiffs claims fail because they have failed to allege any facts or circumstances to support the notion that either the Parishes or  the RPC have denied access to any public areas, accommodations, and/or facilities.

Article I, Section 12 of the Louisiana Constitution states that "in access to public areas, accommodations, and facilities, every person shall be free . . . from arbitrary, capricious, or unreasonable discrimination based on . . . physical condition." La. Const. Art. 1 § 12.  Louisiana

Revised Statute Section 49:16 states that every person shall be free from discrimination in access to public areas, public accommodations, and public facilities.  La. Rev. Stat. Ann. § 49:16.  Section 49:146 defines a public facility "[a]s any publicly or privately owned property to which the general public has access as invitees and shall include such facilities open to the public as hotels, motels, restaurants, cafes, barrooms, and places of entertainment or recreation but shall not include any private club."  *Id.*

"Access means the ability to enter . . . [to] pass to and from . . .  to obtain or make use of."  *Robertson v. Burger King, Inc.*, 848 F.Supp. 78, 81 (E.D.La. 1994) (quoting *Becnel v. City Stores Co.*, 675 F.2d 731, 734 (5th Cir. 1982)) (quotations omitted).  In determining whether a policy of access is in violation, a court must determine whether a "public area, accommodation or facility has a *policy* of discrimination that is arbitrary, capricious or unreasonable."*Albright v. Southern Trace Country Club of Shreveport, Inc*. 2003-3413 (La. 7/6/04), 879 So. 2d 121 (emphasis added).  The party alleging the violation has the burden of establishing by a preponderance of the evidence that the policy is arbitrary, capricious, or unreasonable.  *Id.*

Even if taxicabs are considered a "public accommodation" or "public facility," Plaintiffs have not alleged any facts that show Defendants have created a policy or regulation that denies them access to private taxicabs.  Moreover, Plaintiffs fail to allege that any Defendant creates or administers any policy or regulation that requires private taxicabs to discriminate against individuals.  Because Plaintiffs fail to meet their burden of even showing that there is a policy in

place, much the less one that is arbitrary, capricious, or unreasonable, Plaintiffs claims under Article I, Section 12 of the Louisiana Constitution and Louisiana Revised Statute Section 49:16 are dismissed.

III.     *Louisiana White Cane Law*

"Louisiana's White Cane Law ensures that all physically disabled people have the same rights as able bodied people to access public spaces, common carriers, educational institutions, places of public accommodation, and housing." *Maddox v. Integro USA, Inc.*, CIV.A. 12-1641, 2012 WL 3862355, at *3 (E.D. La. Sept. 5, 2012) (citing La. Rev. Stat. Ann. § 46:1953 (2010)).   The Louisiana White Cane Law prohibits discrimination against the blind, visually handicapped, hearing impaired or otherwise physically disabled. La. Prac. Employment Law § 7:61 (2012-2013 ed.)

Similar to the analysis of Plaintiffs' claims under Article 1, Section 12 of the Louisiana Constitution and the Louisiana Revised Statutes, Plaintiffs have not alleged any facts that show Defendants have effectively denied Plaintiffs access to public accommodations under Louisiana's White Cane Law.  *See Maddox*, 2012 WL 3862355 at *3 (similar to the ADA, the Louisiana White Cane law pertains to public accommodations).  Moreover, to the extent that Plaintiffs make a claim under the Louisiana White Cane Law in the context of employment discrimination, this bears no merit as Plaintiffs fail to allege that they were ever refused employment by any of the Defendants. *See* La. Rev. Stat. Ann. § 46:1951 (it is a policy of the state of Louisiana to encourage and enable a physically disabled person to participate in employment and physically disabled persons shall be

employed in all employment supported in whole or part by public funds on the same terms and conditions as an able-bodied person).

Based on the foregoing Plaintiffs fail to state a claim under Louisiana's White Cane Law. Accordingly, Plaintiffs claims under Louisiana Revised Statute Section 46:1953 are dismissed.

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss filed by Regional Planning Commission(Doc. 27); the Motion to Dismiss filed by Jefferson Parish (Doc. 34); the Motion to Dismiss filed by St. Tammany Parish (Doc. 48); the Motion to Dismiss filed by Orleans Parish (Doc. 49); and the Motion to Dismiss filed by St. Bernard Parish Government (Doc. 58) are GRANTED. Accordingly, all of Plaintiffs claims are dismissed with prejudice, except those claims against Plaquemines Parish which remain fully reserved.

New Orleans, Louisiana on this 14th day of August, 2013.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**